WATIE VAN PATTEN, APPELLANT, V. ROBERT O'BRIEN ET
AL., APPELLEES; W. F. BUCHANAN, INTERVENER, AP-
PELLANT.

FILED JANUARY 24, 1911. No 16,158.

1. **Quieting Title:** DEFENSES. In a suit to quiet title a defendant in
possession may, without proving title in himself, defeat the action
by showing that plaintiff has no title to or interest in the land.

2. ———: DEFENSE OF ADVERSE POSSESSION: EVIDENCE. Where plain-
tiff is defeated in a suit to quiet title and defendants rely alone
on adverse possession for a defense and pray for the cancel-
ation of an outlawed mortgage which an intervener seeks
without avail to foreclose, defendants are not entitled to affirma-
tive relief, if their proof in any material respect fails to show
that they have been in the actual, continuous, open, notorious,
exclusive, adverse possession of the realty for ten years, claim-
ing to be owners.

3. ———: INTERVENTION: RELIEF. Where both plaintiff and defendant
are defeated in a suit to quiet title, an intervener seeking to
foreclose an outlawed mortgage *held* not entitled to a foreclosure,
the owner of the equity of redemption not being a party to the
action.

APPEAL from the district court for Dundy county:
ROBERT C. ORR, JUDGE. *Affirmed in part and reversed in
part.*

*Ralph D. Brown* and *Venrick & Green,* for appellant.

*P. W. Scott, contra.*

*J. W. James,* for intervener.

ROSE, J.

The subject of litigation is a quarter-section of land in
Dundy county. Plaintiff asserts ownership, relies on a
quitclaim deed, and prays for the quieting of her title, for
the cancelation of an outlawed mortgage for $750 and
for rents and profits amounting to $400. Defendants

claim the land by adverse possession, and ask the court to quiet their title, to cancel the outlawed mortgage and to dismiss plaintiff's petition. Intervener bought the mortgage for $50, and prays for a foreclosure, averring that plaintiff acquired the legal title to the mortgaged premises by means of her quitclaim deed; that as part consideration for the conveyance she assumed the mortgage, thereby estopping herself from invoking the statute of limitations to defeat her agreement to pay the debt secured; that defendants have no interest in the land. In substance the findings of the trial court are: Plaintiff has no title to or interest in the land. The mortgage is barred by the statute of limitations. The land belongs to defendants by adverse possession, and their title is clouded by intervener's mortgage. On these findings plaintiff's petition was dismissed. The title to the land was quieted in defendants. Foreclosure was denied and the mortgage canceled. Plaintiff and the intervener appeal.

1. The first question presented is the correctness of the holding that plaintiff has no title. By record evidence she showed: The United States issued a patent to Joseph Dufak May 25, 1891. The patentee and his wife conveyed the land to Frank H. Kaylor by warranty deed January 29, 1894. Plaintiff procured a quitclaim deed from Kaylor December 24, 1905. It is now argued that the record evidence thus showing title in plaintiff is unquestioned, that such title is good as against defendants, and that consequently she has made a *prima facie* case entitling her to relief, since, as she contends, she is not required to show a title good as against all the world. The record evidence, however, is not the only proof adduced by plaintiff in support of her title. After defendants and intervener had rested, plaintiff in rebuttal called as witnesses her husband and I. R. Darnell. It is shown without contradiction that both were her agents in procuring the quitclaim deed. On direct examination they testified to conversations relating to plaintiff's purchase and to the consideration. Van Patten said the expressed

consideration was one dollar and that the consideration actually paid was $50. Both stated nothing was said about the mortgage. On cross-examination as to further conversations, it was shown by both of these witnesses that, when thus acting as agents for plaintiff, they were told by Kaylor he had deeded the land either to "Bob Doty or the old gentleman." Kaylor's deposition was admitted in evidence, and it tends to prove: By warranty deed Kaylor for a valuable consideration conveyed the land to J. R. Doty before executing the quitclaim deed. The second deed was made for the consideration paid for the first with the understanding on part of Kaylor that he was making the former title good. ·One dollar was tendered to him at the time, but it was rejected. After acquiring title J. R. Doty died, leaving children. Doty was not a relative of plaintiff. The proofs further show that plaintiff's claim to title rests alone on her quitclaim deed, and that she was never in possession of the premises.

Plaintiff contends her title is not defeated by oral proof showing her agents had been told by her grantor that he had previously deeded the land either to "Bob Doty or the old gentleman," and that such testimony is incompetent. This proof was properly brought out on cross-examination of plaintiff's witnesses who had testified on direct examination to the conversations leading up to the transfer and to the consideration paid. She was bound by the knowledge of her agents. Kaylor's statement that he had previously deeded the land to another was sufficient notice to put her on inquiry. *McParland v. Peters*, 87 Neb. 829. Plaintiff having gone into the question of consideration and into the conversations leading up to the execution of the quitclaim deed, the trial court properly considered the testimony of Kaylor on the same subjects. It shows that prior to the execution of the quitclaim deed he had conveyed the land to J. R. Doty by warranty deed, and that he had no title whatever to convey to plaintiff. Having been put on inquiry by her grantor, she was chargeable with knowledge of these facts, if they were

not already known to her. Proof that the first deed had been recorded was unnecessary, because it was shown plaintiff knew of its existence. She had no title from any source and had never been in possession. The trial court, therefore, properly dismissed her petition. In a suit to quiet title a defendant in possession may, without proving title in himself, defeat the action by showing that plaintiff has no title to or interest in the land. *Blodgett v. McMurtry,* 39 Neb. 210; *Adams v. Crawford,* 116 Cal. 495; *White v. McGilliard,* 140 Cal. 654.

2. Was the title properly quieted in defendants on the ground of adverse possession? The dismissal of plaintiff's petition for want of title leaves their possession undisturbed. Should the affirmative relief have been granted? They not only undertook to defeat plaintiff's claim, but asked for the cancelation of the mortgage. In seeking such redress they assumed the attitude of plaintiffs. In this situation the burden was on them to show adverse possession for the full statutory period of ten years. Defendants are brothers, four in number, and obtained relief jointly. If the proof is insufficient in any material respect, the title should not have been quieted·in them. Two of them were witnesses, and their testimony tends to show that they had used the land for farming or grazing continuously without interruption under claim of ownership since the spring of 1896. The suit was commenced May 15, 1906. They had never paid the taxes. Kaylor bought the land in 1904, and there is proof showing that he afterward visited the premises, found the father of defendants in possession under a lease from Dufak, told him he owned the land, said it was all right for him to remain, and ratified Dufak's lease. It seems the senior O'Brien claimed at the time he had a right to stay there anyway, but how he obtained this right is not shown, unless it was created by his lease from Dufak. The time and manner of terminating· this lease and of O'Brien's possession under it are not proved. Neither possession of land under a lease nor the mere act of hold-

28

ing over after it expires is adverse. There is proof that the senior O'Brien was in possession under a lease in 1894, and that he and two of his sons farmed part of the land in 1895. Two or three of the defendants were minors and lived with their father from 1895 to 1898. Defendants now assert that, while some of them were still minors in the spring of 1906, they were in the actual, open, notorious, exclusive, adverse possession of the real estate, claiming to be owners. The period of time for which the father leased the land does not appear. If he went into possession under a lease for a term of years, the owner would hardly assume without actual notice that the possession of the minors during the stipulated period was adverse. To sustain the defense under such conditions there should be evidence of the circumstances under which the father's tenancy terminated, or of unequivocal acts showing the time and manner in which the possession of his sons began. The owner should have had actual notice of the adverse claim of defendants, or their possession should have been so open and notorious as to imply such notice. In these respects the testimony relating to the early part of the ten-year period covered by their proofs is incomplete. It does appear, however, that one of the defendants stated on cross-examination he thought the "Doty brothers" cultivated the land in 1895; that another defendant said "Robert Doty" farmed part of the land in 1895; and that a disinterested witness testified the "Doty boys" farmed the land in 1895; but it is not shown that any person so described was the holder of the legal title, or that the J. R. Doty named as grantee in Kaylor's warranty deed was in possession of his property in 1895. For anything appearing in the record the Dotys who then farmed the land may have been sublessees of the senior O'Brien, Dufak's lessee. On this branch of the case the evidence is insufficient to sustain a decree quieting the title in defendants, and the cancelation of the mortgage as prayed in their answer was erroneous.

3. Should the mortgage pleaded by intervener be fore-

closed? According to the evidence the owner of the equity of redemption is not a party to the suit. Plaintiff has no title and did not agree to pay the mortgage. Defendants failed to establish title by adverse possession. The mortgage debt matured June 1, 1895. The suit was commenced May 15, 1906. It is stipulated by the parties that since June 1, 1895, neither the mortgagor nor any one for him has paid anything on the principal note secured. On its face, therefore, the mortgage is barred by the statute of limitations. Intervener in seeking to foreclose his mortgage pleaded that defendants have no title, and his plea has been sustained. Foreclosure under such circumstances would be a vain thing, and it was properly denied.

In so far as the decree quiets the title in defendants and cancels the mortgage it is reversed. The dismissal of plaintiff's petition is affirmed and the petition of intervener is dismissed. The parties will be required to pay their own costs.

JUDGMENT ACCORDINGLY.